**Le T. NGUYEN, et al., Appellants,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Appellee.**

**No. 91–CV–915.**

District of Columbia Court of Appeals.

Argued Feb. 27, 1992.

Decided July 31, 1992.

As Amended Aug. 14, 1992.

---

Richard W. Galiher, Jr., for appellants.

Thomas B. Morrison, for appellee.

Before TERRY and STEADMAN, Associate Judges, and KERN, Senior Judge.

TERRY, Associate Judge:

This case arises out of appellant Le Nguyen's workers' compensation claim against George Washington University. In that proceeding Mrs. Nguyen sought compensation for injuries she suffered as a result of inhaling the fumes of a solvent she used in the course of her job. At about the same time, Mrs. Nguyen filed in the Superior Court a product liability action against the manufacturer of the solvent.[1] The university's insurance carrier paid Mrs. Nguyen $38,620.67 in workers' compensation benefits and then intervened in her suit against the manufacturer, seeking subrogation reimbursement of its payments to Mrs. Nguyen. Eventually the tort action was settled for $250,000. Mr. and Mrs. Nguyen then moved to recover fifty percent of their litigation costs in that suit from the insurance carrier. The trial court denied the motion, finding that the parties had agreed to share the litigation costs on a pro rata basis, *i.e.*, had agreed that the costs paid by the carrier would bear the same ratio to the total litigation costs as the compensation payment ($38,620.67) bore to the total settlement payment ($250,000). The Nguyens appeal from that order. Because there was sufficient evidence to support the trial court's finding, we affirm the order requiring pro rata division of the litigation costs.

---

1. Mrs. Nguyen's husband, Sinh Nguyen, joined in the civil suit as a plaintiff, claiming loss of consortium.

## I

While working as a bookbinder in the George Washington University library, Mrs. Nguyen used a solvent whose fumes, after prolonged exposure, caused damage to her nervous system. After she filed a workers' compensation claim, the university's insurance carrier, Liberty Mutual Insurance Company, voluntarily reimbursed Mrs. Nguyen for her medical expenses and lost wages. Mrs. Nguyen and her husband also filed a tort action against Gaylord Brothers, Inc., the solvent's manufacturer, and Liberty Mutual intervened in that suit in order to recover the money it had paid to Mrs. Nguyen. As the trial date approached in the tort case, the Nguyens' attorney contacted Liberty Mutual's attorney and requested an advance of funds to cover litigation expenses. Liberty Mutual's attorney agreed, on behalf of his client, to advance the funds.

There is no dispute that the Nguyens and Liberty Mutual reached an agreement to share expenses. The details of that agreement, however, are in dispute and have led to the present litigation. Liberty Mutual asserts that the parties agreed to divide the expenses pro rata at the end of the litigation in proportion to the amount each recovered.[2] According to the Nguyens, however, the parties agreed that Liberty Mutual would pay half of all of the litigation expenses, not merely half of the expenses incurred as of June 1990, and not merely a pro rata share.

The case was set for trial in January 1991, but in November 1990 Gaylord Brothers settled with the Nguyens for $250,000. The Nguyens then filed a motion in the trial court seeking to compel Liberty Mutual, pursuant to the alleged agreement between them, to pay half of their remaining litigation costs of $14,137.71. The trial court entered an order denying the motion and requiring Liberty Mutual to pay the Nguyens' litigation costs on a pro rata basis corresponding to the ratio between the compensation payment and the amount of the settlement. This appeal followed.

## II

■ Before this court the Nguyens renew their claim that Liberty Mutual agreed to divide equally the costs of litigating the suit against Gaylord Brothers.[3] The trial court relied on affidavits from the attorneys for both parties in determining whether an enforceable agreement existed and what its terms were. Liberty Mutual's attorney said in his affidavit that he had agreed to advance half of the expenses incurred by the Nguyens "until the end of the litigation. At that time, the expenses due would be adjusted according to the relative amounts of money received by the parties." There had been no agreement "to pay one half of the expenses incurred by [the Nguyens] regardless of the amount of recovery...." The Nguyens' attorney averred, to the contrary, that Liberty Mutual had agreed to pay one-half of all the litigation costs. The trial court found the affidavit of Liberty Mutual's attorney "more credible" and his legal arguments "more persuasive," and ordered the parties to abide by the version of the agreement put forward by Liberty Mutual, namely, to divide the litigation costs pro rata. Because this finding was not plainly wrong and there was evidence to support it, we must accept it. D.C.Code § 17–305(a) (1989); see, e.g., Robinson v. Jones, 429 A.2d 1372, 1374 (D.C.1981).

D.C.Code § 36–335 (1988) allows an injured employee who is eligible for workers'

---

2. I.e., out of the $250,000 settlement Liberty Mutual would recover the $38,620.67 that it had paid to Mrs. Nguyen, and the Nguyens would keep the remainder, which was $211,379.33. Since Liberty Mutual's recovery was approximately 14.8 percent of the total sum, it would have to pay approximately 14.8 percent of the total litigation costs under a pro rata formula.

3. As a threshold matter, the Nguyens argue that the trial court should not have considered Liber-

ty Mutual's opposition to their motion to enforce the alleged agreement because the opposition was filed out of time. We reject this argument. Even if the opposition was filed a few days late, which is probably not the case, see Super.Ct.Civ.R. 6(a) & (e), the court did not abuse its discretion in considering it. See National Voter Contact, Inc. v. Versace, 511 A.2d 393, 397–398 (D.C.1986); Braxton v. McNamara, 429 A.2d 183 (D.C.1981).

compensation to seek additional damages from a third party if the employee concludes that the third party is liable for damages. The statute is silent, however, as to whether the employee is entitled to recover from the employer (or its insurance carrier) any of the costs incurred in litigating the third-party suit. Consequently, the trial court in this case had to rely on the agreement between the parties themselves in deciding how the litigation costs in the Nguyens' suit against Gaylord Brothers were to be divided, if indeed they were to be divided at all. To ascertain the terms of that agreement, the court could only look to the affidavits of the two attorneys, which were in conflict. It resolved that conflict in Liberty Mutual's favor, as it was entitled to do. The trial court also noted that the Supreme Court, in *Bloomer v. Liberty Mutual Insurance Co.*, 445 U.S. 74, 100 S.Ct. 925, 63 L.Ed.2d 215 (1980), had prohibited the sort of division of litigation costs requested by the Nguyens, absent some agreement by the parties.

In *Bloomer* a longshoreman received more than $17,000 in workers' compensation from his employer's insurance carrier. He then sued the shipowner for negligently creating hazardous shipboard conditions. After that suit was settled for $60,000, the longshoreman sought to reduce the employer's compensation lien by an amount representing the employer's proportionate share of the expenses of the suit against the shipowner (about $5,750). The longshoreman asked the Supreme Court "to exercise [its] equitable powers to charge beneficiaries with a share of the expenses of obtaining a 'common fund' through litigation." *Id.* at 77, 100 S.Ct. at 927. The Court held, however, that Congress had not intended such a result when it enacted the Longshoremen's and Harbor Workers' Compensation Act. The Court said that 33 U.S.C. § 933, part of the Longshoremen's Act, served two legislative purposes. First, it prevented "double recovery on the longshoreman's part." *Id.* at 79, 100 S.Ct.

at 928. Second, section 933 contained an "express provision that the employer may recover its legal expenses from the fund created by its own suit against the third party." *Id.* at 80, 100 S.Ct. at 929 (citations omitted). Given this clear legislative intent, the Court concluded that the "common fund" doctrine was not applicable to this type of case. *Id.* at 85, 100 S.Ct. at 931.

▆▆ Appellants maintain that the trial court erred in applying *Bloomer* because that case involved the federal Longshoremen's Act, not the District of Columbia Workers' Compensation Act. We reject this argument because the the the Supreme Court in *Bloomer* was interpreting language in the Longshoremen's Act upon which D.C.Code § 36–335 was based. The Court held that, although an employer who has previously paid workers' compensation may receive an incidental benefit when an employee successfully sues a third party, equity does not require the employer to contribute to the employee's litigation expenses. *Bloomer* was decided in March 1980. The District of Columbia Workers' Compensation Act, including D.C.Code § 36–335, which was "borrowed" from section 933 of the federal act, was enacted by the Council of the District of Columbia in May 1980.[4] Because the Council is "presumed to have borrowed" the Supreme Court's judicial construction of that section as well, *Hughes v. District of Columbia Department of Employment Services*, 498 A.2d 567, 571 n. 8 (D.C.1985) (citation omitted), this court may treat *Bloomer* as "persuasive" precedent, and we elect to do so. *Dunston v. District of Columbia Department of Employment Services*, 509 A.2d 109, 111 n. 2 (D.C.1986). Following *Bloomer*, we hold that any division of litigation costs between an employee who brings a third-party suit and an employer (or insurance carrier) who joins in that suit cannot be compelled unless the employee and employer (or carrier) agree to such a division.[5]

4. The Act became effective on July 1, 1980, 27 D.C.Reg. 2974 (1980), after the prescribed thirty-day congressional review. *See* D.C.Code § 1–233(c)(1) (1987).

5. Appellants also cite *Ferreira v. District of Columbia Department of Employment Services*, 531 A.2d 651, 660 (D.C.1987), in arguing that this court should not follow *Bloomer*'s interpreta-

■ Appellants point out that D.C.Code § 36–335(e) permits the employer, if it sues the third party and recovers damages, to "retain" (*i.e.*, deduct from the sum recovered) an amount equal to its litigation expenses, including a reasonable attorney's fee, before turning over "any excess" to the employee. They argue that because the law "requires that this statute be construed liberally in favor of the employee with respect to issues of statutory interpretation," [6] we should substitute "employee" for "employer" in section 36–335(e) and allow appellants to "retain" their litigation expenses. We cannot agree. Appellants' argument asks us not just to construe the statute liberally but to do gross violence to the statutory language. There is no basis whatsoever in section 36–335(e), or in the case law or legislative history, for any suggestion that "employer" and "employee" are interchangeable. Furthermore, *Bloomer* makes abundantly clear that the intent of Congress in formulating the version of 33 U.S.C. § 933(e) which the Council "borrowed" in 1980 was to permit the employer to recover its legal expenses and to avoid double payment to an employee. *Bloomer, supra,* 445 U.S. at 80–81, 100 S.Ct. at 928–929. Appellants' strained reading of section 36–335(e) would produce just the double payment to an employee that the Court refused to allow in *Bloomer.*

In arguing that Liberty Mutual should pay half of the litigation costs, appellants cite two Fifth Circuit cases, *Bartholomew v. CNG Producing Co.,* 862 F.2d 555 (5th Cir.1989), and *Ochoa v. Employers National Insurance Co.,* 724 F.2d 1171 (5th Cir.), *vacated,* 469 U.S. 1082, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984), *aff'd on reh'g,* 754 F.2d 1196 (5th Cir.1985). These two decisions advocate that the contingent fee arrangement of the employee's attorney should be such that it "leave[s] the injured employee with a larger recovery." *Bartholomew, supra,* 862 F.2d at 558 n. 3; *Ochoa, supra,* 724 F.2d at 1177–1178. Both of these cases, however, arose under a different version of the federal Longshoremen's Act from the one that served as the model for section 36–335 of the District of Columbia Workers' Compensation Act; consequently, they have no bearing on the instant case.

Finally, the Nguyens contend that the trial court erred in applying *Bloomer* because that case involved attorney's fees and the instant case involves litigation fees. This argument overlooks the fact that the petitioner in *Bloomer* sought recovery of "the expenses of the suit," not just attorney's fees. 445 U.S. at 76, 100 S.Ct. at 927. The fact that the amount of those expenses was small, in comparison with the attorney's fees, is legally irrelevant.

In sum, we hold that *Bloomer* controls, and that the trial court therefore did not err in denying the Nguyens' motion to recover half of their litigation costs from Liberty Mutual.

*Affirmed.*

■

---

tion of the federal Longshoremen's Act. In *Ferreira* this court refused to apply a Supreme Court interpretation of the federal act to similar language in the District of Columbia Workers' Compensation Act. *Ferreira* is distinguishable, however, because the Supreme Court case in question there, *U.S. Industries/Federal Sheet Metal, Inc. v. Director, Office of Workers' Comp. Programs,* 455 U.S. 608, 102 S.Ct. 1312, 71 L.Ed.2d 495 (1982), was decided in 1982, two years after the enactment of the District of Columbia Act, and thus "carr[ied] no precedential value" in the *Ferreira* case. *Meiggs v. Associated Builders, Inc.,* 545 A.2d 631, 635 (D.C.1988).

6. In support of this argument, appellants cite our decision in *Ferreira v. District of Columbia Department of Employment Services, supra* note 5. Although they do not cite a specific page of the ten-page *Ferreira* opinion, they appear to be invoking the "statutory presumption of compensability ... [which] reflects a 'strong legislative policy favoring awards in arguable cases.'" *Ferreira,* 531 A.2d at 655 (citations omitted). That presumption, however, has no application to this case because there is no dispute that Mrs. Nguyen's injury was work-related. *See 4934, Inc. v. District of Columbia Department of Employment Services,* 605 A.2d 50, 57 (D.C.1992).